# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT LAW DIVISION

| | | |
|---|---|---|
| RAMIRO BAHENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | No. 15 L 003260 |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES, the PLAINTIFF, RAMIRO BAHEINA, by and through his attorneys, the LAW OFFICE OF JEFFREY J. NESLUND and the LAW OFICE OF AMEE E. ALONSO in complaining of the DEFENDANTS, CHICAGO POLICE OFFICERS DETECTIVE M. KENNEDY, STAR #20102, W.. FIEDLER, STAR #20532, DETECTIVE J HANIACEK STAR #20713, DETECTIVE R. RODRIGUEZ #20751, DETECTIVE ROSS TAKAKI #20824, DETECTIVE M MORETH #20939, DETECTIVE D JENSEN #20334, DETECTIVE VELASQUEZ #21292, DETECTIVE J. HILLMAN #20753 , and THE CITY OF CHICAGO, a Municipal Corporation, states as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to the laws of the State of Illinois and 42 U.S.C. Sec. 1983; all of the complained events occurred in the County of Cook.

### PARTIES

2. Plaintiff, Ramiro Bahena, is a 48 year old resident of the City of Chicago, Illinois.

3. At the relevant times, the DEFENDANT OFFCIERS were Chicago Police Officers, employed by Defendant CITY of CHICAGO and acting under color of law and within the scope of their employment.

4. Defendant CITY of CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois and at all relevant times, was the employer and principal of DEFENDANT OFFICERS.

## FACTUAL BACKGROUND

5. On June 17, 2012, a double homicide occurred at 2338 N. Laramie Avenue in Chicago, Illinois.

6. Plaintiff, Ramiro Bahena, was not present nor in anyway involved in this serious crime.

7. On June 17, 2012, Chicago Police Officers R. Duran and S. Gilmour were two of the first responding officers that arrived at the location of the shooting.

8. Officers Duran and Gilmour were the first officers that spoke with witness Arturo Dela Cruz.

9. Mr. Dela Cruz told the officers that after he heard gunshots he looked out of his second floor window and saw an unknown male running southbound on Laramie Avenue.

10. Mr. Dela Cruz did not identify the shooter as Plaintiff, Ramiro Bahena.

11. Mr. Dela Cruz knew Plaintiff Ramiro Bahena at the time of the shooting.

12. That same day, on June 17, 2012, Defendant Officers Det. R. Takaki, Det. D. Jenson, Det. D. Healey, Det. M. Kennedy, Det. M. Moreth, Det. V. Alonzo, Det. J. Hillman, Det. H. Velazquez, Det. J. Morales and Det. T. Dusenbery were assigned to investigate the homicides and went to the scene of the shootings.

13. Defendant Officers, Det. M. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det.Velazquez, Det. V. Alonzo, Det. T. Dusenbery and Det. J. Hillman interviewed Arturo Dela Cruz at the scene of the shooting.

14. Mr. Dela Cruz told these Defendant officers that he could not identify the shooter.

15. On June 18, 2012, Defendant Detective Takaki submitted a case supplementary report regarding the on-scene interview with Arturo Dela Cruz.

16. In his report, Defendant Detective Takaki knowingly and falsely claimed that Mr. Dela Cruz told Defendant Officers that he witnessed Mr. Bahena firing a gun at his front porch.

17. On June 17, 2012, Defendant Det. Moreth viewed surveillance footage captured by cameras located at 2334 N. Laramie Ave., Chicago, Illinois.

18. One of the cameras captured footage of an unknown male shooting from across the street toward 2338 N. Laramie Avenue.

19. The shooter did not remotely resemble Mr. Bahena in dress or physical appearance.

20. On June 17, 2012 Defendant Officers transport Mr. Dela Cruz to Area North Detective Headquarters.

21. While at headquarters, Arturo Dela Cruz informed Defendant Officers, Det. M. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det.Velazquez and Det. J. Hillman, that he could not identify the shooter in this incident as Mr. Bahena due to his poor eyesight.

22. The investigating detectives, Defendant Det. M. Kennedy, Det. W. Fiedler, Det.

5

J. Haniacek, Det. R. Rodriguez Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det.Velazquez and Det. J. Hillman never showed Mr. Dela Cruz the video surveillance footage that captured the actual offender shooting from across the street toward the porch area of 2338 N. Laramie Avenue.

23. Defendant Officers, Det. M. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det.Velazquez and Det. J. Hillman held Arturo Dela Cruz at Area North Detective Headquarters against his will and threatened that if Arturo Dela Cruz failed to identify Ramiro Bahena as the shooter they would release Plaintiff and he would kill Arturo Dela Cruz's family.

24. After acceding to Det. M. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det.Velazquez, Det. V. Alonzo and Det. J. Hillman threatening demands, Mr. Dela Cruz was released.

25. On June 17, 2012, Defendant Officers, Det. Healey and Det. Jenson arrested Plaintiff at his home.

26. On June 19, 2012, despite the coerced identification, Plaintiff was released from police custody without being charged with a crime.

27. Despite Plaintiff's release, Defendant Det. M. Kennedy, Det. R. Rodriguez Jr., Det. Ross Takaki , Det. M. Moreth , Det. H. Velazquez, Det. J. Hillman, Det. Healey and Det. Jensen authored police reports that falsely indicated that Mr. Dela Cruz identified Mr. Bahena as the shooter in a photo array and lineup.

28. Defendants knew that their reports would be passed on to the prosecuting authorities.

29. No other witness implicated Plaintiff in the shooting.

30. No physical or forensic evidence linked Plaintiff to the shooting.

5

31. On July 17, 2012, one month after the shooting, Defendant Officers Det. M. Kennedy and Det. M. Moreth re-arrested Plaintiff and charged Plaintiff with first degree murder and attempt first degree murder.

32. The Defendant Officers knew that they lacked probable cause for these charges.

33. Knowing that they lacked probable cause, Defendant Officers Det. R. Takaki, Det. D. Jenson, Det. D. Healey, Det. M. Kennedy, Det. M. Moreth, Det. V. Alonzo, Det. J. Hillman, Det. H. Velazquez, Det. Fiedler, Det. Haniacek, Det. Rodriguez, Det. R. Rodriguez, Det. Fiedler, Det. Healey and Det. J. Morales commenced and continued Mr. Bahena's prosecution.

34. These Defendants did so by fabricating evidence and providing false reports and information to the prosecuting attorneys.

35. While in custody, Plaintiff agreed to speak with the Defendant detectives.

36. Plaintiff's interviews did not implicate him in the crime.

37. For the first time, in November of 2013, Mr. Dela Cruz saw the surveillance video that captured the shooting.

38. After viewing the surveillance footage, Mr. Dela Cruz stated that the man in the video was not Plaintiff.

39. Mr. Dela Cruz stated that the man in the video does not have a ponytail, is too big, does not have a deformed arm, and that Plaintiff could never run that fast.

40. On December 4, 2013 Arturo Dela Cruz took an eye exam which documented his exceptionally poor vision.

41. Shortly thereafter, those results were received by prosecuting attorneys.

42. In March of 2014 Mr. Dela Cruz was interviewed by the Cook County State's Attorney's Office.

43. On April 1, 2014 all charges initiated by the DEFENDANT OFFICERS against the Plaintiff were dismissed in a manner indicative of his innocence.

44. PLAINTIFF was released from custody after spending 657 days in custody.

## COUNT I

### Illinois Malicious Prosecution

45. Plaintiff re-alleges and incorporates paragraphs 1-44 above as fully stated herein.

46. As more fully stated above, DEFENDANT OFICERS caused criminal proceedings against Plaintiff to be commenced and continued with malice, without probable cause and knowing the Plaintiff was not guilty of the crime for which he was charged.

47. All charges against Plaintiff were dismissed in a manner indicative of Plaintiff's innocence, which were terminated in Plaintiff's favor.

48. As a direct and proximate result of this illegal and malicious conduct, Plaintiff has suffered damages including loss of freedom and emotional distress.

49. Illinois law provides that public entities, such as Defendant CITY of CHICAGO, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

50. At all relevant times, DEFENDANT OFFICERS were agents of Defendant CITY of CHICAGO and acting within the scope of their employment as a Chicago Police Officers. Defendant CITY of CHICAGO, therefore, is liable as principal for all torts committed by DEFENDANT OFFICERS.

## COUNT II

### 745 ILCS 10/9-102

51. Plaintiff re-alleges and incorporates paragraphs 1-44 above as fully stated herein.

52. Defendant CITY of CHICAGO is the employer of all the individual police officer DEFENDANTS.

53. The Officer DEFENDANT OFFICERS committed the acts alleged above under color of law and in the scope of their employment as employees of the CITY of CHICAGO, such that the CITY of CHICAGO is responsible for their actions outlined above.

## COUNT III

### Fourth Amendment Claim for Deprivation of Liberty

54. Plaintiff re-alleges and incorporates paragraphs 1-44 above as fully stated herein.

55. As a result of evidence fabricated by the DEFENDANTS, the Plaintiff was deprived of his liberty and was incarcerated in the Cook County Department of Corrections.

56. But for the misconduct of the DEFENDANTS outlined above, the Plaintiff would not have suffered a deprivation of his liberty.

57. The misconduct of DEFENDANTS outlined above proximately caused injury to the Plaintiff, including, but not limited to prolonged incarceration, humiliation, embarrassment, and severe emotional distress.

## REQUEST FOR RELIEF

58. Plaintiff respectfully requests that the Court:

    a. Enter a judgment in his favor and against DEFENDANTS;

    b. Award compensatory damages against DEFENDANTS;

    c.    Award attorney's fees against DEFENDANTS;

    d.    Award punitive damages against the individual DEFENDANTS; and

    e.    Grant any other relief this Court deems just and appropriate.

Respectfully submitted,

/s/ JEFFREY J. NESLUND
One of Attorneys for Plaintiff

Jeffrey J. Neslund
Law Offices of Jeffrey J. Neslund
20 North Wacker Drive, Suite 3710
Chicago, Illinois 60606
(312) 223-1100


Amee E. Alonso
Law Office of Amee E. Alonzo
33 N. Dearborn, Suite 1950
Chicago, IL 60602
(773) 412-5228