# EXHIBIT B

Atty. No#: 90633　　　　　　　　　　　　　　　　　　　　56167-LSK

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT – LAW DIVISION

RAMIRO BAHENA,

　　　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　Case No. 15 L 3260

CITY OF CHICAGO, et. al.,

　　　　　　　Defendants.

## DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COME the Defendants, CITY OF CHICAGO, CHICAGO POLICE OFFICERS DETECTIVE M. KENNEDY, Star No. 20102, DETECTIVE, W. FIEDLER, Star No. 20532, DET. JOHN HANIACEK, Star No. 2022, DETECTIVE R. RODRIGUEZ, Star No. 20751, DETECTIVE ROSS TAKAKI, Star No. 20824, DET. M. MORETH, Star No. 837, DET. D. JENSEN, Star No. 20334, DET. VELAZQUEZ, Star No. 21292, DETECTIVE V. ALONSO, Star No. 21623, DET. T. DUSENBERY, Star No. 21037, DET. J. MORALES, Star No. 20741, DETECTIVE D. HEALEY, Star No. 20855, and DET. J. HILLMAN, Star No. 20753, by and through their attorneys, Querrey & Harrow, Ltd. and for their Answer and Affirmative Defenses to Plaintiff's First Amended Complaint, state as follows:

### JURISDICTION AND VENUE

1.　　　This action is brought pursuant to the laws of the State of Illinois and 42 U.S.C. Sec. 1983; all of the complained events occurred in the County of Cook.

**ANSWER:**　　Defendants admit jurisdiction and venue, but deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

## PARTIES

2. Plaintiff Ramiro Bahena is a 48 year old resident of the City of Chicago, Illinois.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations set forth in paragraph 2.

3. At the relevant times, the "DEFENDANT OFFICERS" were Chicago police officers employed by Defendant CITY of CHICAGO and acting under color of law and within the scope of their employment.

**ANSWER:** Defendants admit paragraph 3, but deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter

4. Defendant CITY of CHICAGO is a municipal corporation, duly incorporated under the laws of the State of Illinois and at all relevant times was the employer and principal of DEFENDANT OFFICERS.

**ANSWER:** Defendants admit paragraph 4, but deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

## FACTUAL BACKGROUND

5. On June 17, 2012, a double homicide occurred at 2338 N. Laramie Avenue in Chicago, Illinois.

**ANSWER:** Defendants admit that on June 17, 2012, a double homicide occurred at said location.

6. Plaintiff, Ramiro Bahena, was not present nor in anyway involved in this serious crime.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 6, and further state that probable cause existed to arrest and charge Plaintiff.

7. On June 17, 2012, Chicago Police Officers R. Duran and S. Gilmour were two of the first responding officers that arrived at the location of the shooting.

**ANSWER:** Defendants admit that on June 17, 2012, said officers arrived at the location of the shooting.

8. Officers Duran and Gilmour were the first officers that spoke with witness Arturo Dela Cruz.

**ANSWER:** Defendants deny the allegations of paragraph 8 as phrased. Further answering, Defendants admit that Officer Duran interviewed Mr. De La Cruz.

9. Mr. Dela Cruz told the officers that after he heard gunshots he looked out of his second floor window and saw an unknown male running southbound on Laramie Avenue.

**ANSWER:** Defendants deny the allegations of paragraph 9 as phrased. Further answering, Defendants admit that Officer Duran interviewed Mr. De La Cruz.

10. Mr. Dela Cruz did not identify the shooter as Plaintiff Ramiro Bahena.

**ANSWER:** Defendants deny paragraph 10 as phrased. Further answering, Mr. De La Cruz did indeed identify Plaintiff as the shooter, including in a photo array and lineup.

11. Mr. Dela Cruz knew Plaintiff Ramiro Bahena at the time of the shooting.

**ANSWER:** On information and belief, Defendants admit that Mr. De La Cruz knew Plaintiff as a boyfriend of his mother, Maria Rabadan-Arrocena.

12. That same day, on June 17, 2012, Defendant Officers Det. R. Takaki, Det. D. Jenson, Det. D. Healey, Det. M. Kennedy, Det. M. Moreth, Det. V. Alonzo, Det. J. Hillman, Det. H. Velazquez, Det. J. Morales and Det. T. Dusenbery were assigned to investigate the homicides and went to the scene of the shootings.

3

**ANSWER:** Defendants admit that the above Detectives were assigned, with various duties at or near the scene.

13. Defendant Officers, Det. M. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det. Velazquez, Det. V. Alonzo, Det. T. Dusenbery, and Det. J. Hillman interviewed Arturo Dela Cruz at the scene of the shooting.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 13. Further answering, Defendants admit Mr. De La Cruz was interviewed at various times by various Defendant Detectives.

14. Mr. Dela Cruz told these officers that he could not identify the shooter.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 14.

15. On June 18, 2012, Detective Takaki submitted a case supplementary report regarding the on-scene interview with Arturo Dela Cruz.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 15. Further answering, a case supplementary report was submitted July 18, 2012 by Detective Takaki, who incorporated various Detectives' GPRs and notes into the Case Supplementary Report.

16. In his report, Detective Takaki knowingly and falsely claimed that Mr. Dela Cruz told Defendant officers that he witnessed Mr. Bahena firing a gun at his front porch.

**ANSWER:** Defendants deny the allegations in paragraph 16. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

17. On June 17, 2012, Det. Moreth viewed surveillance footage captured by cameras located at 2334 N. Laramie Ave., Chicago, Illinois.

4

**ANSWER:** Defendants admit Det. Moreth viewed grainy home security camera footage from 2334 N. Laramie Ave., Chicago, Illinois.

18. One of the cameras captured footage of an unknown male shooting from across the street toward 2338 N. Laramie Avenue.

**ANSWER:** Defendants admit a home security camera at 2334 N. Laramie recorded certain footage across the street, including grainy footage that showed the shooter's position at the time of the shooting and the direction the shooter fled after the shooting.

19. The shooter did not remotely resemble Mr. Bahena in dress or physical appearance.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 19.

20. On June 17, 2012 Defendant Officers transport Mr. Dela Cruz to Area North Detective Headquarters.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 20. Further answering, witness Mr. De La Cruz voluntarily agreed to relocate to Area North headquarters.

21. While at headquarters, Arturo Dela Cruz informed Defendant Officers, Det. M. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez, Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det. Velazquez and Det. J. Hillman, that he could not identify the shooter in this incident as Mr. Bahena due to his poor eyesight.

**ANSWER:** Defendants deny the allegations in paragraph 21. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

22. The investigating detectives, Det. M. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez, Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det. Velazquez, and Det. J.

5

Hillman never showed Mr. Dela Cruz the video surveillance footage that captured the actual offender shooting from across the street toward the porch area of 2338 N. Laramie Avenue.

**ANSWER:** Defendants deny the grainy home security camera "captured" the actual offender shooting but admit it gave information on the position of the shooter in relation to the shell casings found, as well as the direction the shooter fled after the shooting, and thus deny the allegations and conclusions as phrased in paragraph 22.

23. Defendant Officers, Det. M. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez, Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det. Velazquez, and Det. J. Hillman held Arturo Dela Cruz at Area North Detective Headquarters against his will and threatened that if Arturo Dela Cruz failed to identify Ramiro Bahena as the shooter they would release Plaintiff and he would kill Arturo Dela Cruz's family.

**ANSWER:** Defendants deny the allegations in paragraph 23. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

24. After acceding to Det. M. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez, Jr., Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det. Velazquez, and Det. J. Hillman threatening demands; Mr. Dela Cruz was released.

**ANSWER:** Defendants deny the allegations in paragraph 24. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

25. On June 17, 2012, Defendant Officers, Det. Healey and Det. Jensen arrested plaintiff at his home.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 25. Further answering, Plaintiff was arrested outside of his home.

26. On June 19, 2012, despite the coerced identification, Plaintiff was released from police custody without being charged with a crime.

**ANSWER:** Defendants deny a coerced identification and thus deny the allegations as phrased in paragraph 26. Further answering, Plaintiff was released without charges on June 19, 2012.

27. Despite Plaintiff's release, Det. M. Kennedy, Det. R. Rodriguez Jr., Det. Ross Takaki, Det. M. Moreth, Det. H. Velazquez, Det. J. Hillman, Det. Healey, and Det. Jensen authored police reports that falsely indicated that Mr. Dela Cruz identified Mr. Bahena as the shooter in a photo array and lineup.

**ANSWER:** Defendants deny the allegations in paragraph 27. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

28. Defendants knew that their reports would be passed on to the prosecuting authorities.

**ANSWER:** Defendants deny the allegations and conclusions as phrased in paragraph 28.

29. No other witness implicated Mr. Bahena in the shooting.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 29.

30. No physical or forensic evidence linked Plaintiff, Ramiro Bahena to the shooting.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 30.

31. On July 17, 2012, one month after the shooting, Defendant Officers Det. M. Kennedy and Det. M. Moreth re-arrested Plaintiff and charged Plaintiff with first degree murder and attempted first degree murder.

**ANSWER:** Defendants admit that on July 17, 2012, Plaintiff was arrested and on or about July 19, 2012, charged with first degree murder and attempted first degree murder.

32. The Defendant Officers knew that they lacked probable cause for these charges.

**ANSWER:** Defendants deny all allegations in paragraph 32. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

33. Knowing that they lacked probable cause for these charges, Det. R. Takaki, Det. D. Jenson, Det. D. Healey, Det. M. Kennedy, Det. M. Moreth, Det. V. Alonzo, Det. J. Hillman, Det. H. Velazquez, Det. Fiedler, Det. Haniacek, Det. Rodriguez, Det. R. Rodriguez, Det. Fiedler, Det. Healey and Det. J. Morales commenced and continued Mr. Bahena's prosecution.

**ANSWER:** Defendants deny all allegations in paragraph 33. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

34. These Defendants did so by fabricating evidence and providing false reports and information to the prosecuting attorneys.

**ANSWER:** Defendants deny all allegations in paragraph 34. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

35. While in custody, Mr. Bahena agreed to speak with the detectives.

**ANSWER:** Defendants admit that Mr. Bahena waived *Miranda* and was interviewed as well as given a polygraph test.

36. His interviews did not implicate him in the crime.

**ANSWER:** Defendants deny the allegations as phrased in paragraph 36.

37. For the first time, in November of 2013, Mr. Dela Cruz saw the surveillance video that captured the shooting.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations set forth in paragraph 37.

38. After viewing the surveillance footage Mr. Dela Cruz stated that the man in the video was not Plaintiff.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations set forth in paragraph 38.

39. Mr. Delacruz stated that the man in the video does not have a ponytail, is too big, does not have a deformed arm, and that Mr. Bahena could never run that fast.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations set forth in paragraph 39.

40. On December 4, 2013, Arturo Dela Cruz took an eye exam which documented his exceptionally poor vision.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations set forth in paragraph 40.

41. Shortly thereafter, those results were received by the prosecuting attorneys.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations set forth in paragraph 41.

42. In March of 2014 Mr. Dela Cruz was interviewed by the Cook County State's Attorney's Office.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations set forth in paragraph 42.

43. On April 1, 2014, all charges initiated by the DEFENDANT OFFICERS against the Plaintiff were dismissed in a manner indicative of his innocence.

**ANSWER:** Defendants admit that on April 1, 2014 charges were *nolle prosequi* by the State's Attorney's office, but deny all remaining allegations and conclusions in paragraph 43.

44. Mr. Bahena was released from custody after spending 657 days in custody.

**ANSWER:** Defendants lack sufficient information to admit or deny the allegations set forth in paragraph 44.

## COUNT I

### Illinois Malicious Prosecution

45. Plaintiff re-alleges and incorporates paragraphs 1-44 above as fully stated herein.

**ANSWER:** Defendants restate and incorporate their answers to paragraphs 1 through 44 as if fully set forth herein.

46. As more fully stated above, DEFENDANT OFFICERS caused criminal proceedings against Plaintiff to be commenced and continued with malice, without probable cause and knowing the Plaintiff was not guilty of the crime for which he had been charged.

**ANSWER:** Defendants deny all allegations contained in paragraph 46. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

47. All charges against Plaintiff were dismissed in a manner indicative of Plaintiff's innocence, which were terminated in Plaintiff's favor.

**ANSWER:** Defendants admit that on April 1, 2014 charges were *nolle prosequi* by the State's Attorney's office, but deny all remaining allegations and conclusions in paragraph 47.

10

48. As a direct and proximate result of this illegal and malicious conduct, Plaintiff has suffered damages including loss of freedom and emotion distress.

**ANSWER:** Defendants deny all allegations contained in paragraph 48. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter

49. Illinois law provides that public entities, such as Defendant CITY of CHICAGO, are directed to pay any compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment.

**ANSWER:** Defendants admit that Illinois law provides that public entities are liable for compensatory damages on a tort judgment against an employee who was acting within the scope of his or her employment. Further answering, however, Defendants deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter

50. At all relevant times, DEFENDANT OFFICERS were agents of Defendant CITY of CHICAGO and acting within the scope of their employment as Chicago Police Officers. Defendant CITY of CHICAGO, therefore, is liable as principal for all torts committed by DEFENDANT OFFICERS.

**ANSWER:** Defendants admit that at all relevant times they were employed by Defendant City and acting within the scope of their employment. Further answering, however, Defendants deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

## COUNT II

**745 ILCS 10/9-102**

51. Plaintiff re-alleges and incorporates paragraphs 1-44 above as fully stated herein.

**ANSWER:** Defendants restate and incorporate their answers to paragraphs 1 through 44 as if fully set forth herein.

52. Defendant CITY of CHICAGO is the employer of all the individual police officer DEFENDANTS.

**ANSWER:** Defendants admit the allegations of paragraph 52.

53. The Officer DEFENDANT OFFICERS committed the acts alleged above under color of law and in the scope of their employment as employees of the CITY OF CHICAGO, such that the CITY OF CHICAGO is responsible for their actions outlined above.

**ANSWER:** Defendants admit that at all relevant times they were employed by Defendant City and acting within the scope of their employment. Further answering, however, Defendants deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter.

## COUNT III

### Fourth Amendment Claim for Deprivation of Liberty

54. Plaintiff re-alleges and incorporates paragraphs 1-44 above as fully stated herein.

**ANSWER:** Defendants restate and incorporate their answers to paragraphs 1 through 44 as if fully set forth herein.

55. As a result of evidence fabricated by the DEFENDANTS, the Plaintiff was deprived of his liberty and was incarcerated in the Cook County Department of Corrections.

**ANSWER:** Defendants admit that Plaintiff was incarcerated in the Cook County Department of Corrections, but deny all remaining allegations contained in paragraph 55. Defendants further deny

12

that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter

56. But for the misconduct of the DEFENDANTS outlined above, the Plaintiff would not have suffered a deprivation of his liberty.

**ANSWER:** Defendants deny all allegations contained in paragraph 56 and further state there was probable cause to detain the plaintiff. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter

57. The misconduct of DEFENDANTS outlined above proximately caused injury to the Plaintiff, including, but not limited to prolonged incarceration, humiliation, embarrassment, and severe emotional distress.

**ANSWER:** Defendants deny all allegations contained in paragraph 57. Defendants further deny that any wrongful conduct or deprivation of Plaintiff's rights occurred and further deny that Plaintiff is entitled to any recovery in this matter

WHEREFORE, Defendants, CITY OF CHICAGO, CHICAGO POLICE OFFICERS DETECTIVE M. KENNEDY, Star No. 20102, DETECTIVE, W. FIEDLER, Star No. 20532, DET. JOHN HANIACEK, Star No. 2022, DETECTIVE R. RODRIGUEZ, Star No. 20751, DETECTIVE ROSS TAKAKI, Star No. 20824, DET. M. MORETH, Star No. 837, DET. D. JENSEN, Star No. 20334, DET. VELAZQUEZ, Star No. 21292, DETECTIVE V. ALONSO, Star No. 21623, DET. T. DUSENBERY, Star No. 21037, DET. J. MORALES, Star No. 20741, DETECTIVE D. HEALEY, Star No. 20855, and DET. J. HILLMAN, Star No. 20753, respectfully request that this Court enter judgment in their favor and against Plaintiff, to assess costs and for any further relief this Court deems just and proper.

## **AFFIRMATIVE DEFENSES**

Without waiver of any of the denials in the above paragraphs, Defendants, by and through their attorneys, QUERREY & HARROW, LTD, assert the following Affirmative Defenses to Plaintiff's First Amended Complaint:

1. Under the Local Governmental and Governmental Employees Tort Immunity Act (hereinafter "Illinois Tort Immunity Act"), the City of Chicago is not liable for an injury resulting from an act or omission of its employee where the employee is not liable. 745 ILCS 10/2-109.

2. Under the Illinois Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because the Defendants' actions with respect to Ramiro Bahena were based upon the information and circumstances known to Defendant Officers at the time and were discretionary for which they are immune from liability. 745 ILCS 10/2-201.

3. Under the Illinois Tort Immunity Act, Defendant Officers are not liable for any claims alleged because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law, unless such acts or omissions constitute willful and wanton conduct. 745 ILCS 10/2-202.

4. As to any state law claim, under the Illinois Tort Immunity Act, Defendant Officers are not liable for any of the claims alleged because a public employee, as such, and acting within the scope of his employment, is not liable for any injury caused by the act or omission of another person. 745 ILCS 10/2-204.

5. Plaintiff is not entitled to attorney's fees for his state law claims. *See Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 227 (7th Cir. 1989); *Kerns v. Engelke*, 76 Ill. 2d 154, 166, 390 N.E.2d 859, 856 (1979).

6. Plaintiff's Fourth Amendment Claim for Deprivation of Liberty fails to state a cause of action, and/or was not commenced within the applicable statute of limitations.

7. An award of punitive damages would deprive the Defendant Officers of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where:

   (a) liability for punitive damages has not been proven beyond a reasonable doubt, or at least by clear and convincing evidence; and
   (b) the award of punitive damages is disproportionate to actual damages.

8. The City of Chicago cannot be held liable for punitive damages for bad faith actions of its officials. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

## JURY DEMAND

The Defendants demand a trial by jury.

Respectfully Submitted:

*/s/ signature/*

QUERREY & HARROW, LTD.
Attorneys for Defendants Det. Kennedy, Det. W. Fiedler, Det. J. Haniacek, Det. R. Rodriguez, Det. Ross Takaki, Det. M. Moreth, Det. D. Jensen, Det. Velazques, Det. V. Alonzo, Det. T. Dusenbery, Det. J. Morales, Det. D. Healy, Det. J. Hillman and City of Chicago.

Larry S. Kowalczyk
Megan K. Monaghan
QUERREY & HARROW, LTD.
175 West Jackson Boulevard, Suite 1600
Chicago, IL 60604
Phone: (312) 540-7000
E-mail: lkowalczyk@querrey.com
mmonaghan@querrey.com
Document #: 1741028

15