# EXHIBIT B

# TO PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS PURSUANT TO LOCAL RULE 56.1(B)(3)(c) THAT REQUIRE THE DENIAL OF SUMMARY JUDGMENT

*Bahena v. City of Chicago, et al.*
*17 CV 8532*

Ramiro Bahena double homicide    Page 1 of 2

## Ramiro Bahena double homicide

NANCY GALASSINI (States Attorney)
Sent: Friday, March 21, 2014 4:21 PM
To: FABIO VALENTINI (States Attorney)
Cc: JOSEPH MAGATS (States Attorney)

Fabio, This email is a summary of the case facts as I discussed them with you in detail earlier today.

Defendant Ramiro Bahena is charged with two counts of murder, three counts of attempt murder and various other related charges stemming from the shooting deaths of Jaime O'Campo and Santiago Delgado on 17 JUNE 2012.

Both the victims were drinking on the porch at 2338 N Laramie, the home of Maria Rabadan, along with attempt murder victim Margarita Martinez. Rabadan was in a year long sexual relationship with defendant whom she met through their mutual junking business. At around 2130 hours defendant went to the house and argued with Rabadan for not returning his calls and for drinking with other men. During the argument words were exchanged between defendant and O'Campo. Defendant threatened to call his boys and come back and kill them all, O'Campo stated he was a Latin King and would have his boys go after Bahena. The police were called and Rabadan did not tell them of the threat and asked that the police just make defendant leave. Police stated that defendant was quite angry, and at first did not comply with their request to leave, but finally defendant left the area. All the above, video only (no audio), was captured on the surveillance system from the home next door.

At 0039 hours, shots were fired from across the street, also captured on video, killing the victims and wounding Martinez. No one on the porch could identify the shooter. The video is not clear enough to make out facial features. Our approval of charges was based on the eyewitness testimony of Arturo De La Cruz, the son of Rabadan, who was looking out the from a second story window, saw the shooter and in a handwritten and before the grand jury stated he recognized defendant as the shooter.

Defendant was arrested and denied. His son stated that he saw his dad that night and did not know if he went out because defendant lived in the basement as his mother, defendant's wife, kicked him out for sleeping with Rabadan. Defendant has no criminal history and no known gang ties. He is 46 years old.

Therefore, the only evidence we have against defendant is the statement of De La Cruz and the video.

Statement of De La Cruz=problems

1. Tells first responding POs shooter was an unknown male Hispanic, but knows defendant.
2. Is looking out second story window, at night, in the rain, through a canopy of trees with full leaves,
3. Has 20/100 vision documented by a doctor that is uncorrected and would mean he cannot make a facial ID pass 20 feet.
4. ID's shooter as defendant based primarily on the clothing, stating shooter wearing same clothes as defendant was earlier in evening, however De La Cruz wasn't there for fight at 2130 based on his prior and current statements, as well as phone records and other witnesses.
5. Our HW and GJ on De La Cruz have him seeing defendant at 1930 at the Laramie address, however phone records indicate defendant was calling Rabadan and not at the house at that time and no video was pulled from 1930 for reasons unknown. De La Cruz now states he NEVER saw defendant that night prior to the shooting. Defendant's son stated he saw defendant around their place at 3055 W Belden around that time.
5. Video clearly shows that defendant and shooter are not wearing the same clothes as De La Cruz is locked into in his HW and GJ.
6. De La Cruz was never shown the video by police or prosecutors and when he viewed it repeatedly prior to trial stated that the shooter on the video is not defendant. He knew defendant for a few years prior to the shooting.
7. De La Cruz stated he never got a really good look at the shooter when looking out the window, but thought it was defendant because he was aware of the earlier fight and threats as his mother called him during the 2130 incident.

SAQ 000348

8. De La Cruz stated he was angry at defendant and thought he may have done it and felt pressure by the police to say it was or was not defendant and not maybe.
9. De La Cruz will not now testify defendant was the shooter.

Video=problems

1. Video captures images of defendant at the location during the 2130 incident.
2. Defendant is not dressed the same as the shooter in the video.
3. Defendant is closer to the camera in the 2130 incident, yet the shooter, who is further from the camera appears taller than defendant.
4. In general, the video appears to show a younger, taller, stockier male, with possibly shorter hair as the shooter.
5. The shooter raises both his arms easily; defendant has a defect in one arm that precludes that per witnesses.
6. The video was sent to the FBI and cannot be enhanced.
7. The FBI stated a height of the shooter could be determined however it would have a plus or minus of 14 inches.
8. A random showing of the video to persons who have seen defendant, i.e., victim/witness, do not think shooter resembles defendant.
9. A random showing of video to persons who are told to compare person we know is defendant from 2130 incident to shooter, have 100% stated shooter and person we know is defendant do not appear similar from the video.

Conclusion

The only witness to the shooting now states he cannot say defendant was the shooter. The strongest piece of evidence, the video, does not implicate defendant beyond a reasonable doubt and the only EW in the case did not see video prior to charging.

If we are to proceed on the theory that defendant is the shooter, I do not believe we have evidence at this juncture beyond a reasonable doubt.

Thank you for your consideration of this matter, ASA Galassini