IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| RAMIRO BAHENA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 17 cv 8532 |
| vs. | ) | |
| | ) | |
| DETECTIVE MICHAEL KENNEDY, STAR #20102; DETECTIVE HIPOLITO VELAZQUEZ, STAR #21292; DETECTIVE JUAN CARLOS MORALES STAR NO. 20741; DETECTIVE JOHN HILLMAN, STAR #20753, | ) ) ) ) ) | The Honorable Joan H. Lefkow Judge Presiding |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW**

Defendants, CHICAGO POLICE DETECTIVES MICHAEL KENNEDY, STAR #20102, HIPOLITO VELAZQUEZ, STAR #21292; JUAN CARLOS MORALES, STAR #20741, JOHN HILLMANN, STAR #20753, and the CITY OF CHICAGO, by and through their attorneys, QUERREY & HARROW, LTD., pursuant to Rule 50 of the Federal Rules of Civil Procedure, respectfully move for judgment as a matter of law in their favor and state as follows:

## INTRODUCTION

Judgment as a matter of law should be granted in Defendants' favor. Plaintiff has not proved beyond a reasonable doubt that his pretrial detention was unsupported by probable cause. Nor has he proved by a preponderance of the evidence that Defendant Detectives maliciously prosecuted him. Accordingly, a reasonable jury would not be able to find in Plaintiff's favor.

## STANDARD OF REVIEW

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment

as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." FED. R. CIV. P. 50(1). At any time before a case is submitted to the jury, a party may make a motion for judgment as a matter of law in which the party "must specify the judgment sought and the law and facts that entitle the movant to the judgment." FED. R. CIV. P. 50(1)-(2). Judgment as a matter of law is proper where no reasonable jury could find for a Plaintiff. *Harper v. Albert*, 400 F.3d 1052, 1061 (7th Cir. 2005); *Davis v. Novy*, No. 03 CV 572, 2004 U.S. Dist. LEXIS 11027, at *21 (N.D. Ill. June 15, 2004).

When deciding a Rule 50(a) Motion, a court will review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party. *Davis*, 2004 U.S. Dist. LEXIS 11027, at *19 (N.D. Ill. June 15, 2004). Further, courts may not make credibility determinations or weigh the evidence, but give credence to the evidence favoring the nonmovant, as well as that "evidence supporting the moving party that is uncontradicted and unimpeached . . . ." *Id.*; *Ortloff v. United States,* 335 F.3d 652, 660 (7th Cir. 2003).

## ARGUMENT

### I. Plaintiff Failed to Prove His Fourth Amendment Unlawful Pretrial Detention Claim Against Defendants

#### A. Clear Probable Cause Existed to Believe Plaintiff Was the Shooter

No reasonable jury could find, based on the evidence presented in Plaintiff's case-in-chief, that Plaintiff's pretrial detention was unlawful. The evidence introduced at trial demonstrated that Defendant Detectives had probable cause to believe that Plaintiff was the shooter based on the credible identification made by Arturo De La Cruz, which was corroborated by the physical and video evidence.

The Supreme Court ruled that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process . . . ." *Manuel v. City of Joliet*, 137 S. Ct.

911, 920 (2017). Pretrial detention rests on the Fourth Amendment principle that a pretrial detention is a "seizure" and is thus justified only on probable cause. *Id.* at 918. Fourth Amendment seizures are reasonable if there is probable cause to believe that the individual has committed a crime. *Id.* at 917. Probable cause is an absolute bar to a § 1983 claim for unlawful pretrial detention. *McWilliams v. City of Chi.*, 451 F. Supp. 3d 867, 878 (N.D. Ill. 2020).

Pursuant to the Fourth Amendment, probable cause exists when "'the facts and circumstances within [detectives'] knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense.'" *Hill v. City of Chi.*, No. 15 CV 1317, 2016 U.S. Dist. LEXIS 161266, at *15 (N.D. Dist. Nov. 21, 2016) (Zagel, J.) (quoting *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998)). Probable cause does not require certainty a crime was committed, but only a probability of criminal activity. *Beauchamp v. City of Noblesville*, 320 F.3d 733, 734 (7th Cir. 2003). Probable cause also does not require enough evidence to support a conviction, and it does not require officers to show that their belief is more likely true than false. *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 679 (7th Cir. 2007); *Woods v. City of Chi.*, 234 F.3d 979, 996 (7th Cir. 2000). Significantly, courts assess probable cause "'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'" *Hill*, 2016 U.S. Dist. LEXIS 161266, at *15 (quoting *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006)).

Plaintiff has failed to prove his case by a preponderance of the evidence. The evidence introduced showed that Detectives Hillmann and Velazquez arrived on scene after Detective Takaki, who arrived on scene between 1:20-1:30 a.m. After speaking with Detective Takaki, they approached Arturo De La Cruz who was standing outside of the building located at 2338 N.

3

Laramie. The evidence showed that Mr. De La Cruz agreed to speak with the detectives and that Detective Hillmann conducted the interview in English. Mr. De La Cruz informed them that he had seen the shooting and described what he had seen. After learning that he had witnessed the shooting from the second floor apartment, Detectives Hillmann and Velazquez went with Arturo up to the second floor apartment. Once there, Arturo showed Detectives how he had been leaning out of the window to check on his mother and sister when he heard shots being fired. He then saw the shooter running southbound on Laramie toward Medill while continuing to shoot. He further explained that once the shooter cleared trees, he was able to see that it was his mother's boyfriend, Ramiro Bahena. It is immaterial that Detectives Hillmann and Velazquez do not recall exactly where they were standing the first time Arturo named Ramiro as the shooter, as Arturo did unequivocally name Ramiro as the shooter on scene.

Arturo then agreed to accompany Detectives Hillmann and Velazquez to Area North to be interviewed further. The evidence introduced in this case shows that Arturo was not interviewed for a period of 5-6 hours by Detectives Hillmann, Velazquez, and Morales. Rather, the evidence shows that Detective Velazquez, a robbery detective, prepared the photo array and then returned to working on his robbery cases. Detective Morales, whose role all Defendants have testified was solely that of translator, also translated for the interviews of Maria Rabadan and Margarita Martinez during this time frame. Once the canvassing was completed and the scene was processed, Detective Hillmann consulted with Detective Takaki about showing the photo array. After Detective Takaki agreed the photo array should be shown, the photo array was administered to Arturo De La Cruz. Detective Velazquez read the advisory form in English before handing a Spanish advisory form to Arturo while Detective Morales read the Spanish Advisory form. Arturo

4

was then given a chance to read the Spanish advisory form before he signed it. After Detective Velazquez handed him the photo array, he identified Plaintiff as the person he saw shooting.

Plaintiff was then arrested shortly after 8:00 a.m. and brought to Area North. After fillers for the lineup were located and transported to the Area, a physical lineup was conducted. Prior to the lineup and after Arturo De La Cruz had already identified Plaintiff as the shooter, Detective Kennedy spoke with Arturo De La Cruz for the first time. That conversation was in English. Based on his communications in English and on Arturo's representations, Detective Kennedy gave an English lineup advisory form, which contained the same information as the photo array advisory form. He read the form to Arturo who was then given a chance to read and sign it. Once the lineup began, Arturo identified Plaintiff as the person he saw shooting. He then returned home. Notably, Arturo admitted in his testimony that he never asked to leave.

Mr. De La Cruz's identification of Plaintiff as the shooter did not end there. On June 18, 2012, he agreed to return to Area North in order to speak with ASA Jacqueline Kwilos Griffin. At the Area, he spoke with her before it was decided that they would return to his apartment at 2338 N. Laramie so that ASA Griffin could see the scene. Detective Kennedy, Detective Alvarez, and ASA Griffin then drove the 15-20 minutes to 2338 N. Laramie and arrived there shortly after midnight. They entered Mr. De La Cruz's residence and went to the living room where Arturo again demonstrated how he had been standing at the time he saw the shooting and pointed out what he had seen. ASA Griffin testified that she could see what Arturo was pointing out. Detective Alvarez was then asked to go across the street and stand where Arturo had initially seen the shooter. While across the street, Detective Alvarez was asked to move southbound toward Medill. Both ASA Griffin and Detective Kennedy testified during trial that they could clearly see it was Detective Alvarez from the second floor apartment. ASA Griffin further testified that no issues

5

were raised regarding Arturo's eyesight and that she believed he was telling the truth about what he had seen.

ASA Griffin and Detectives Kennedy and Alvarez then returned to the Area with Arturo arriving some time after them. ASA Griffin then took the handwritten statement of Arturo at approximately 3:20 a.m. She testified that it was not uncommon to take handwritten statements at that time. Detective Alvarez translated accurately during the handwritten statement. Arturo De La Cruz again identified Plaintiff as the shooter to ASA Griffin. After reviewing the statement to determine whether anything needed to be corrected, ASA Griffin had Detectives Kennedy and Alvarez step away so she could ask Arturo how he had been treated. Arturo told ASA Griffin that he had not been threatened or promised anything for his statement. ASA Griffin further testified that she had no concerns regarding the conduct of the investigating detectives.

ASA Griffin continued the investigation on June 19, 2012, primarily so that detectives could obtain GSR results regarding a blue sweater and attempt to interview Santiago Delgado who was in the ICU. She testified that continuing the investigation is common in homicide cases. After the case was continued, the GSR came back negative and Mr. Delgado succumbed to his injuries. After Plaintiff's July 17, 2012 arrest, ASA Herrera approved felony charges against Plaintiff.

Then, on July 27, 2012, Detectives Kennedy and Moreth transported Maria Rabadan and Arturo de la Cruz to the grand jury. Lt. Moreth testified that the transportation was provided as a courtesy as Ms. Rabadan was a victim of an attempted murder and Arturo De La Cruz was a cooperating witness and they knew he had a recent arrest for driving without a license. During the car ride, Detectives simply explained the grand jury process and made small talk with Arturo in English. Upon arriving at 26th and California, they brought Ms. Rabadan and Arturo De La Cruz to ASA Jamie Santini, introduced them, and then went elsewhere in the building to wait. Arturo

6

De La Cruz testified under oath at the grand jury that Ramiro Bahena was the shooter and he testified that he told Detectives the same thing. Ms. Rabadan testified at the Grand Jury that Ramiro Bahena had threatened to come back and kill her and the others on the porch mere hours before the shooting. Detectives Kennedy and Moreth drove Ms. Rabadan and Arturo De La Cruz home. Lt. Moreth later testified before the Grand Jury as well. The Grand Jury indicted Plaintiff on August 10, 2012.

In short, the evidence presented during the trial established that Mr. De La Cruz consistently and unwaveringly identified Mr. Bahena as the shooter from the time he spoke with Detectives on scene all the way through July 27, 2012 when he testified under oath before the Grand Jury. Detectives thus had clear probable cause to believe that Plaintiff was the shooter.

Significantly, "an identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Woods*, 234 F.3d at 996. *See Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 439 (7th Cir. 1986) (internal quotations omitted) ("explaining that law enforcement officers have probable cause when they receive information "from some person -- normally the putative victim or an eye witness -- who it seems reasonable to believe is telling the truth. . . ."). "Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters." *Gramenos*, 797 F.2d at 439. An eyewitness's credibility is "not for police officers in the discharge of their duties." *Morris v. City of Chi.*, No. 09 CV 4247, 2013 U.S. Dist. LEXIS 51318, at *6 (N.D. Ill. Apr. 10, 2013) (Zagel, J.) (citing *Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 1999)).

Here, Arturo was credible in identifying Plaintiff as the shooter multiple times to multiple Detectives and Assistant State's Attorneys. From the very spot he had observed the shooting, Arturo described what he had seen to four detectives and ASA Griffin. Significantly, the physical

7

evidence—the location of the bullet casings—and the video of the shooting corroborated Arturo's description of what he had seen during the shooting. No reasonable jury could find that Detectives did not have probable cause to believe Plaintiff was the shooter because of the consistent and unwavering identification made repeatedly by a credible eyewitness.

Although a detective cannot close his or her eyes to evidence or information that undercuts probable cause and an officer must pursue reasonable avenues of investigation when there are questions that a crime has taken place, *Fox v. Hayes,* 600F.3d 819, 834 (7th Cir. 2010); *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir.1986), the law is clear that once detectives have discovered facts sufficient to establish probable cause, they have "no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." *Garcia v. Chicago*, 24 F.3d 966, 970 (7th Cir. 1994), *cert. denied*, 514 U.S. 1003 (1995); *see also Eversole v. Steele*, 59 F.3d 710, 718 (7th Cir. 1995).

In this matter, the scope of the investigation renders it indisputable that Defendants did not close their eyes to any evidence that would have undermined probable cause and all reasonable avenues of investigation were indeed followed. First, Detectives Hillmann, Velazquez, and Morales had no involvement in the investigation following the photo array and were not involved in Plaintiff's criminal case. Detective Kennedy, the only Defendant who was involved in the case following Plaintiff's arrest, clearly followed all reasonable avenues of investigation as he continued trying to locate and interview potential eyewitness and witnesses to the earlier domestic incident in the days following Plaintiff's June 17, 2012 arrest, and continued trying to obtain any possible video footage of the incident. Furthermore, contrary to insinuations made by Plaintiff at trial, there was no concrete information that led Detectives Kennedy and Moreth to believe that the shooting was gang related. Of note, when Plaintiff and the suspects were searched on police

8

databases, Detectives learned they were not documented gang members. Additionally, Detective Rodriguez had interviewed the man named Santos, who had been with Plaintiff on June 16, 2012, following the earlier incident, and learned that he was not with Plaintiff around the time of the shooting and was thus not an alibi witness. In short, there was no evidence or information that would undermine the clear probable cause Detectives. Therefore, per *Garcia*, once Defendant Detectives had probable cause based on Arturo De La Cruz's identification of Plaintiff as the shooter, which was corroborated by the objective physical and video evidence, they had no constitutional duty to conduct further investigation.

### B. Post-Indictment Events Have No Bearing on the Probable Cause Analysis

A significant part of Plaintiff's case-in-chief revolved around information that came to light well over a year after Plaintiff was indicted by the Grand Jury when Arturo De La Cruz decided he was no longer going to identify Plaintiff as the shooter. Any attempt by Plaintiff to raise issues or information discovered *after* the date of his indictment ignores the clear-cut law on probable cause determinations for §1983 claims. Specifically, that the question is what the officers knew *at the time*, not what hindsight may or may not have shown. *See Zitzka v. Westmont*, 743 F. Supp. 2d 887, 908 (N.D. Ill. 2010) ("A court evaluates probable cause not with the benefit of hindsight, "but on the facts as they appeared to a reasonable person in the defendant's position, even if that reasonable belief turned out to be incorrect.").

In this matter, the evidence introduced at trial established that the information known to Detectives at the time Plaintiff was detained was sufficient to establish probable cause for the reasons set forth above. Any information obtained by ASA Adduci at the end of the criminal case, a year and a half after the Defendants last had any involvement in the investigation, does not undermine the probable cause that existed between the time of the shooting and Plaintiff's

9

indictment. Although the issues raised long after Plaintiff's indictment have no bearing on the existence of probable cause, it should be noted that Arturo admitted to ASA Adduci that he never told Detectives or ASA Griffin that he had poor eyesight.

Moreover, because a grand jury indicted Plaintiff, Plaintiff must prove the Detectives knowingly or intentionally or with a reckless disregard for the truth, falsified the factual basis for the indictment by making materially false statements or omitting material facts. *Lewis v. City of Chicago*, 914 F.3d 472,477 (7th Cir. 2019); *Whitlock v. Brown*, 596 F.3d 406, 410-11 (7th Cir. 2010); *Williams v. City of Chicago*, 2018 U.S. Dist. LEXIS 92515,* 13 (N.D. Ill. June 1, 2018) (Dkt. 77); *Coleman v. City of Peoria*, 925 F.3d 336, 351 (7th Cir. 2019). However, there was insufficient evidence at trial to meet this requirement. Arturo De La Cruz told ASA Galassini Aducci that he was only asked if Ramiro Bahena was or was not the shooter. No reasonable jury could find that Defendants falsified the factual basis for the indictment based on that.

Accordingly, for the reasons set forth above, Plaintiff has failed to meet his burden of proof as he has not proved by a preponderance that his pretrial detention was not supported by probable cause.

**II.     Defendant Detectives Should Be Afforded Qualified Immunity**

Based on the evidence presented at trial, Defendant Detectives should be afforded qualified immunity. Qualified immunity shields officers from liability under § 1983 when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). *See also Tangwall v. Stuckey*, 135 F.3d 510, 514 (7th Cir. 1998) (explaining qualified immunity protects officers from interferences with their duties and threats of liability). Qualified immunity applies in cases where an officer makes a mistake regardless of whether it is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* "The qualified immunity standard 'gives

10

ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986)); *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018). Qualified immunity shields a law enforcement officer from liability "if a reasonable officer could have believed [the plaintiff's arrest] to be lawful, in light of clearly established law and the information [the officers] possessed." *Hunter*, 502 U.S. at 227.

In order to overcome qualified immunity, Plaintiff must establish: (1) his allegations amount to a constitutional violation, and (2) if his allegations do amount to a constitutional violation, that the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232; *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009). "Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of defeating it either by identifying a closely analogous case or by persuading the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully." *Abbott v. Sangamon County*, 705 F.3d 706, 723-24 (7th Cir. 2013).

First, Plaintiff did not prove in his case-in-chief establish that his allegations amount to a constitutional violation. When Detectives have probable cause to believe a crime has been committed or is being committed, "their actions will be cloaked with qualified immunity if the arrestee is later found innocent." *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998). Qualified immunity still applies even if probable cause was lacking as long as a reasonable officer could have mistakenly believed probable cause existed. *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012). "[A]n identification or a report from a single, credible victim or eyewitness can provide the basis for probable cause." *Woods*, 234 F. at 996.

11

The evidence presented at trial here established that Arturo De La Cruz's repeated credible identifications of Plaintiff as the shooter to multiple Detectives and multiple Assistant State's Attorneys, along with the objective physical and video evidence that corroborated his statements, gave rise to objective probable cause to believe that Plaintiff was the individual who fired a gun multiple times at the individuals located on the front porch at 2338 N. Laramie. The evidence presented at trial proved that Defendant Detectives were acting in good faith and following the evidence at all times. Defendants are thus entitled to qualified immunity because Plaintiff's pretrial detention was supported by probable cause.

Second, in order to show that a right was "clearly established" at the time of the incident, Plaintiff "must identify 'existing precedent' placing 'the statutory or constitutional question beyond debate,' or present the 'rare obvious case' where a body of relevant precedent is unnecessary." *Brown v. Morsi*, No. 15 CV 2147, 2018 U.S. Dist. 106954, at *15-16 (N.D. Ill. June 26, 2018) (Blakey, J.) (quoting *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017); *District of Columbia v. Wesby*, 138 S. Ct. 577, 590-91 (2018)). Here, Plaintiff must identify existing case law "defining the allegedly violated right in a manner '*particularized to the facts of the case*.'" *Id.* (quoting *Green*, 868 F.3d at 633) (emphasis added). This is particularly significant when dealing with the Fourth Amendment because "an officer might struggle to determine how the 'relevant legal doctrine' will apply to the 'factual situation the officer confronts.'" *Id.* at *16 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Clearly established law cannot be defined "at a high level of generality." *Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1060 (7th Cir. 2018). Plaintiff cannot satisfy this prong because probable cause clearly existed here. This Court should thus afford Defendants qualified immunity.

### III. Plaintiff Has Not Proved His Malicious Prosecution Claim By a Preponderance of the Evidence

The demonstrable evidence of probable cause to charge Plaintiff with Murder, Attempted Murder, and Aggravated Batter entitles Defendant Detectives to judgment in their favor on the state law Malicious Prosecution claim. To succeed on a claim for Malicious Prosecution under Illinois law, a plaintiff must prove "(1) the commencement or continuation of an original criminal or civil proceeding by defendants, (2) termination of the proceeding in favor of plaintiff, (3) the absence of probable cause for the proceeding, (4) the presence of malice on defendant['s] part, and (5) damages resulting to plaintiff." *Boyd v. City of Chi.*, 378 Ill. App. 3d 57, 71 (2007). All five elements must be present in order to succeed on a malicious prosecution claim. *Sang Ken Kim v. City of Chi.*, 368 Ill. App. 3d 648, 654 (1st Dist. 2006). As a matter of public policy, Illinois does not favor suits for malicious prosecution. As with the other claims under consideration, the existence of probable cause also bars a state claim for malicious prosecution. *Sexton v. Cotton*, No. 06 CV 4225, 2008 U.S. Dist. LEXIS 89762, at *69 (N.D. Ill. Nov. 5, 2008) (Dow, J.).

Here, as Plaintiff's arrest and detention were supported by probable cause, his malicious prosecution claim against Defendant Detectives automatically fails. For purposes of a malicious prosecution claim, probable cause exists when there is "a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Williams v. City of Chicago*, 733 F.3d 749, 759 (N.D. Ill. 2013) (internal citations omitted). When considering whether probable cause was absent from the proceedings, courts consider the state of mind of the person commencing the prosecution, not guilt or innocence or the facts of the case. *Id.* (citing *Sang Ken Kim*, 368 Ill. App. 3d at 654). If a mistake or error is not grossly negligent, it will not impact the question of probable cause as long as the officer honestly believes that the accused is probable guilty of committing a crime. *Sang Ken Kim*,

368 Ill. App. 3d at 654. For the reasons detailed above, Defendant Detectives had clear probable cause to believe that Plaintiff was the shooter.

Next, Plaintiff failed to introduce any evidence that Defendant Detectives acted with malice. Plaintiff must prove that "the officer who initiated the prosecution had any motive other than that of bringing a guilty party to justice." *Aleman v. Vill. of Hanover Park*, 662 F. 3d 897, 907 (7th Cir. 2011). Apart from offering a speculative and rhetorical theory that Detectives wanted to solve the case quickly, Plaintiff has not provided any evidence that would support a finding of malice. Moreover, any argument Defendants just wanted to quickly resolve the case is belied by the fact that Detective Kennedy, along with other Detectives, continued investigating leads and potential witnesses. There is thus no evidence that any Detective had any motive other than that of bringing Plaintiff to justice.

Finally, there is no evidence that Detectives Hillmann, Velazquez, or Morales played an active role in the prosecution. Arturo De La Cruz identified Plaintiff as the shooter to Detectives Hillmann and Velazquez on scene. After returning to Area North, Detective Hillmann interviewed Arturo De La Cruz again with the assistance of Detective Morales, who was the translator. Detectives Hillmann and Velazquez then presented the photo array to Arturo De La Cruz, while Detective Morales was present to assist in translating. Significantly, not one of these three Detectives had any involvement in the investigation following the photo array. Detectives Morales and Velazquez further testified that they were unaware that Plaintiff had been arrested and indicted and were also unaware that a criminal case was pending against him until they were served with this lawsuit. These three Detectives, therefore, did not commence or continue the criminal case. With respect to Detective Kennedy, although he was in communication with the Cook County State's Attorney's Office, felony charges were approved based on the ASAs' review of the file

14

and the handwritten statement taken by ASA Griffin. Furthermore, the Grand Jury reviewed the evidence and indicted Plaintiff which led to his criminal case. Accordingly, Plaintiff has failed to satisfy his burden of proof with respect to his Malicious Prosecution claim.

WHEREFORE, Defendants, CHICAGO POLICE DETECTIVES MICHAEL KENNEDY, STAR #20102, HIPOLITO VELAZQUEZ, STAR #21292; JUAN CARLOS MORALES, STAR #20741, JOHN HILLMANN, STAR #20753, and the CITY OF CHICAGO, respectfully request that this Court grant their Rule 50 Motion for Judgment as a Matter of Law and enter judgment in Defendants' favor, and for any other relief this Court deems just.

                              Respectfully submitted,

                              By:/s/ Larry S. Kowalczyk
                                 One of Defendants' Attorneys

Larry S. Kowalczyk-Special Assistant Corporation Counsel
Megan K. Monaghan-Special Assistant Corporation Counsel
Querrey & Harrow, Ltd.
120 N. LaSalle Street, Suite 2600
Chicago, IL 60602
(312) 540-7000
Email: lkowalczyk@querrey.com
        mmonaghan@querrey.com